Miller County Highway and Bridge District v. Cook.

Opinion delivered May 20, 1918.

Improvement districts—payment of expenses incident to securing passage of bill—invalid acts.—The board of improvement of an improvement district is without authority to pay money to persons by way of expenses in procuring the passage of a bill for the creation of the district; the Legislature is without authority to authorize such payments, and it can not ratify or confirm such payments when made.

Appeal from Miller Chancery Court; *Jas. D. Shaver,* Chancellor; affirmed.

*M. E. Sanderson,* for appellant.

1. Conceding that the commissioners exceeded their authority in allowing the claims, their action was afterwards validated by the amendatory act of 1917, §§ 6 and 7.

2. The Legislature has power to enforce previous moral obligations. 10 Allen (Mass.), 585; 95 U. S. 644; 56 Ind. 363; 6 A. & E. Enc. (2 ed.) 943.

3. The amounts allowed were legitimate items of expense, and their acts were not against public policy.

119 Ark. 188; 83 Ark. 344; 107 *Id.* 285; *Ib.* 292; 112 *Id.* 357. The allowances were properly classed as actual expenses, and it was clearly within the province of ·the Legislature to validate the acts. *Supra.*

*Jno. N. Cook, pro se.*

1. Appellants admit that the district exceeded its authority in allowing these claims. Such lobbying expenses were illegal. 127 Ark. 1; 4 L. R. A. (N. S.) 121, note; 9 A. & E. Enc. L. (1 ed.) 898. The attorney's fee allowed was against public policy. 33 Ark. 575; K. & C. Dig., § § 7416, 7437.

2. The unlawful acts were not validated by the amendatory act of 1917. It was not within its power and there was no reference in the Act to such acts nor attempt to validate them. 32 Ark. 619; 61 *Id.* 502; 93 Col. 321. There was no moral obligation on the district to allow the claims, as they were clearly unlawful. The money was raised by taxation and was used for an unlawful purpose. 66 Ark. 36, 82; Const., Art. 16, § 11.

### STATEMENT OF FACTS.

This action was brought by John N. Cook, plaintiff below, appellee here, who was a land owner in Miller County Highway and Bridge District, against the commissioners of that district and George T. Conway, C. M. Conway and Walter Conway, doing business as Conway Bros., and George T. Conway, Louis Heilbron, M. E. Sanderson, Louis Joseph and A. H. Little. All parties defendant to the action except George T., C. M. and Walter Conway, doing business as Conway Bros., George T. Conway and Louis Heilbron have passed out of the case.

The complaint alleged that the above district was organized by special act of the Legislature of 1915 and that three commissioners for the district were named; that the commissioners paid to George T. Conway the sum of $252.53; and that they paid to Conway Bros. the sum of $326.05; and to Heilbron the sum of $25. They alleged that these sums were all paid· out and were ex-

pended by the parties to whom paid for an illegal purpose. The prayer of the complaint was for judgment against the appellants and that the sums paid them be returned to the treasurer of the district. With the complaint were certain interrogatories propounded to the commissioners and the appellants which were designed to ascertain the purpose for which the sums designated were expended.

The appellant, George T. Conway, answered, admitting that the district paid him the sum of $252.53, and alleged that the sum was paid for the purpose of enabling him to employ an attorney to institute suit against the district to test the constitutionality of the act creating it. The answer at great length sets out the facts, why this was necessary in order to enable the district to float its bonds, which we deem it unnecessary to set forth in detail here. He alleged that he expended the money for this purpose and denied that the same was illegal.

Appellant Heilbron admitted that the district paid him the sum of $25, which was to reimburse him for actual expenses consisting of railroad fare, hotel bill, and other incidental items in making a trip from Texarkana to Little Rock, for the purpose of taking the original draft of the bill to create the Miller County Highway and Bridge District, a few days before the bill was enacted into a law by the Legislature in 1915.

Appellants Conway Bros. answered through C. M. Conway the interrogatories, denying liability but admitting that it had received the sum of $314.45 from the district, which it expended, through C. M. Conway, as follows:

"Clerk hire in getting the bill through the
  House of Representatives ........................$ 55.00
Stenographer ........................................... 15.00
Railroad fare ........................................... 58.00
Hotel, meals and room for three weeks
  for different parties in getting the
  bill through the Legislature.................... 162.00
Telephone and telegraph bills................... 23.00"

The answer of the commissioners was to the effect that the money was paid out to the respective parties to reimburse them in the sums they had severally expended for the purposes set forth in their respective answers to the interrogatories.

The court heard the cause upon the pleadings, the interrogatories, the answers thereto, the oral testimony and found that appellants were indebted to the district in the respective amounts that had been paid to them by the commissioners as alleged in the complaint and rendered judgment against each of them for the respective sums that they had received and in favor of appellee Cook for his costs.

By this appeal appellants seek to reverse that decree.

WOOD, J., (after stating the facts). The appellants concede that the Board of Commissioners exceeded its authority in paying to appellants the amounts for which this suit is instituted, but it is contended that these unauthorized acts were validated by the amendatory act of 1917, which in part provides: "All the acts of the commissioners of the said Miller County Highway and Bridge District and of their agents in so far as they have acted by the authority of the commissioners and all acts of the assessors of said district are hereby ratified and confirmed, particularly the action of said commissioners in levying taxes upon the assessed benefits in said district by their resolutions adopted on the 5th of December, 1916," *et cetera.* The above section then proceeds to enumerate certain acts of the commissioners which are ratified and confirmed. Nowhere in the section are the acts of the commissioners in paying to appellants the amounts herein sued for specified.

When the language quoted above is read in connection with the context of the section in which it appears and with the language of the other sections of the amendatory act, it is clear that it was not the intention to validate the unauthorized act of the commissioners in paying

to appellants the amounts herein sued for.  Even if it were within the power of the Legislature to ratify these unauthorized payments, it does not appear from the language employed that it was its intention to do so.  See *Lee* v. *Huff*, 61 Ark. 502.

(2)   In the recent case of *Buchanan* v. *Farmer*, 122 Ark. 562-566, we said: "In *Harris* v. *Roof's Excrs.*, 10 Barb. (N. Y.) 489, the court held that no action will lie for services as a lobby agent in attending to a claim against the State before the Legislature, and that agreements in respect to such services are against public policy, and are prejudicial to sound legislation.  To the same effect are *Trist* v. *Child*, 21 Wall. (U. S.) 441; *Rose* v. *Truax*, 21 Barb. (N. Y.) 361; *Clippenger* v. *Hepbaugh*, 5 Watts & Sergeant (Pa.) 315, 40 Am. Dec. 519."

The proof shows that the amount paid to Conway Bros. or C. M. Conway and to Heilbron were in the nature of fees or compensation for lobby services in procuring the enactment of the bill, by the Legislature, creating the improvement district.

The amount paid to George T. Conway was to enable him to procure the services of an attorney to institute suit in his (Conway's) name against the district to test its validity.  In other words, the district paid for the services of an attorney to bring suit which challenged its own existence and then defended that suit. There was no authority for such payment.

However worthy and honest may be the motive for such appropriation of moneys, which are levied and collected by way of local assessments for public improvements, they are contrary to public policy and void.  The Legislature could not authorize the payment of money for such purposes in the first instance, and, therefore, it was not within its power to ratify and confirm such payments after they had been made.

The decree of the court is, therefore, correct and is affirmed.